**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARMEN MALDONADO GONZÁLEZ, in her personal capacity as RESIDENTIAL SUBSCRIBER of PRASA, and in her official capacity as MAYOR OF THE MUNICIPALITY OF MOROVIS; MUNICIPALITY OF MOROVIS, as a GOVERNMENTAL SUBSCRIBER of PRASA; GENOVEVA LÓPEZ; JUSTINIANO CALDERÓN; SHERLEY SOTO; AUREA CASTELLANO; SONIA OTERO; MIGUEL A. SEPÚLVEDA; PABLO RIVERA BURGOS; and OTHER SIMILARLY SITUATED RESIDENTIAL AND COMMERCIAL SUBSCRIBERS OF PRASA who Reside or Do Business in the Municipality of Morovis<br><br>*Plaintiffs*<br><br>v.<br><br>PUERTO RICO AQUEDUCTS AND SEWER AUTHORITY ("PRASA"); DORIEL PAGÁN CRESPO, in her personal capacity and in her official capacity as Executive President of PRASA; JOSÉ A. RIVERA ORTIZ, in his personal capacity and in his official capacity as Regional Executive Director of PRASA; INSURANCE COMPANY ABC<br><br>*Defendants* | CIVIL NO.<br><br>CIVIL RIGHTS CLASS ACTION FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES; CONSTITUTIONALITY OF STATE STATUTE<br><br>JURY TRIAL IS REQUESTED |

**VERIFIED COMPLAINT**

**TO THE HONORABLE COURT:**

COME NOW, Plaintiffs, on their behalf and on behalf of other similarly situated residential

and commercial subscribers of the Puerto Rico Aqueducts and Sewer Authority ("PRASA" or

"Defendant") who reside or do business in the Municipality of Morovis, through the undersigned counsel, respectfully STATE, ALLEGE AND PRAY:

## NATURE OF THE ACTION

1.      Plaintiffs, on their behalf and on behalf of other similarly situated residential and commercial subscribers of PRASA who reside or do business in the Municipality of Morovis, bring this civil rights class action under 28 U.S.C. §1343 and 42 U.S.C. §1983 seeking injunctive and declaratory relief, and damages, for the pattern of unconstitutional deprivation of water service to which they have been subjected since 2017, in violation of the 14th Amendment of the United States Constitution, which states, in pertinent part that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

## JURISDICTION

2.      This Honorable Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, 42 U.S.C. §1983, and the Fourteenth Amendment of the United States Constitution.

## PARTIES

3.      Plaintiffs are (1) Carmen Maldonado González ("Maldonado"), in her personal capacity as residential subscriber of PRASA who resides in the Municipality of Morovis, and in her official capacity as Mayor of the Municipality of Morovis, (2) the Municipality of Morovis, a governmental subscriber of PRASA, and (3) Genoveva López, (4) Justiniano Calderón, (5) Sherley Soto, (6) Aurea Castellano, (7) Sonia Otero, and (8) Miguel A. Sepúlveda, residential subscribers of PRASA who reside in the wards of Unibón, Torrecillas, Barahona, Morovis Sur, Río Grande, and Franquez, respectively, of the Municipality of Morovis, on their behalf and on behalf of other

similarly situated residential and commercial subscribers of PRASA who reside or do business in the Municipality of Morovis.

4.     Co-Defendant, PRASA, is "an autonomous government instrumentality of the Commonwealth of Puerto Rico" created by virtue of Law No. 33 of June 27, 1985, 27 Laws of P.R. Ann., Tit. 27, §262 *et seq.*, whose essential function is to "provide to the inhabitants of Puerto Rico an adequate drinking water, sanitary sewage service and any other service or facility proper or incidental thereto." P.R. Laws Ann., Tit. 22, §§ 142, 144.

5.     PRASA is the sole provider of water services within Puerto Rico.

6.     Co-Defendant, Doriel Pagán Crespo ("Pagán"), is PRASA's Executive Director and, as such, is responsible of ensuring that all PRASA' subscribers receive an adequate water service in exchange of the monthly water fee collected by PRASA. She is also directly responsible of overseeing and supervising all PRASA's districts or areas in Puerto Rico, including the Morovis area. Pagán has direct and personal knowledge of the pattern of lack of water service in the Municipality of Morovis and she has personally met in various occasions with Maldonado and other Plaintiffs to discuss this continuous problem. These discussions and/or efforts have had no results up to this date.

7.     Co-Defendant, José A. Rivera Ortiz ("Rivera Ortiz"), is PRASA's Regional Executive Director for the region that includes the Municipalities of Morovis, Vega Baja, Ciales, Manatí, Barceloneta and Florida, respectively. Rivera Ortiz is directly responsible of ensuring that these municipalities have water service. For these purposes, multiple engineers and supervisors of PRASA report directly to, and are supervised by, Rivera Ortiz.

8.     Co-Defendant, Insurance Company ABC is an insurance company authorized to do business in Puerto Rico, whose name is currently unknown, but who has, had and/or have had, an

insurance policy in favor of PRASA to cover the damages resulting from PRASA's negligence, and who is, therefore, jointly and severally liable for Plaintiffs' damages suffered due to the pattern of lack of water service in the Municipality of Morovis.

**JURY DEMAND**

9.      Plaintiffs demand a trial by jury in this action.

**FACTUAL ALLEGATIONS**

10.     The Municipality of Morovis is located in the central region of Puerto Rico, north of Orocovis, south of Manatí, Vega Baja and Vega Alta; east of Ciales, and west of Corozal.

11.     The Municipality of Morovis consists of the following fourteen wards: (1) Pueblo, (2) Morovis Norte, (3) Morovis Sur, (4) Montellano, (5) Franquez, (6) Torrecillas, (7) Barahona, (8) Unibón, (9) Pasto, (10) Vaga, (11) San Lorenzo, (12) Río Grande, (13) Perchas, and (14) Cuchillas.

12.     According to the United States Census Bureau, as of July 1, 2021, the Municipality of Morovis had a total of 28,871 residents.

13.     Water is essential to life, health, well-being, safety and sanitation.

14.     All Plaintiffs have valid registered accounts with PRASA and paid the corresponding bonds for the water service subscription, as well as PRASA's monthly water service invoices.

15.     The Río Grande de Manatí (hereinafter "the river") is the Municipality of Morovis' primary drinking water supply source. Essentially, water is pumped from PRASA's Raw Water Supply Intake Facility ("RWSIF"), located at the river, into the Morovis Sur Water Treatment Plant ("MSWTP") for treatment prior to distribution to its customers.

16.     For many years, and up to the present, the Municipality of Morovis, its residents and businesses have suffered a continuous problem of lack of water service.

17.     Most of the time, there is no water service in Morovis.

18.     The problem of lack of water in the Municipality of Morovis has been amply published by the press in Puerto Rico throughout the past recent years.

19.     Each day, on average, at least three wards of the Municipality of Morovis, have no water service.

20.     In the municipal elections of 2016, Maldonado, who is affiliated to the Popular Democratic Party ("PDP"), was elected as Mayor of the Municipality of Morovis. She was re-elected in the municipal elections of 2020. Therefore, Maldonado has been the Mayor of Morovis from January 2017 until the present.

21.     After Maldonado began her tenure as Mayor of the Municipality of Morovis in January 2017, and particularly after Hurricane María, the water service problem in Morovis, which historically has been deficient, worsened.

22.     Residents and business of the Municipality of Morovis suffer every day from the lack of water service, and continuously complain to the Municipality of Morovis about the lack of water, and ask for water.

23.     From January 2017 to the present, co-Plaintiff, the Municipality of Morovis, has spent more than one million dollars ($1,000,000.00) hiring and purchasing cistern trucks to distribute water to its residents, purchasing water tanks to provide its residents, paying its employees to work on distributing water to the Municipality's residents, and hiring experts to analyze and advise on how to solve the water service problem in the Municipality of Morovis, among other expenses related to the lack of water service.

24.     The problem of the continuous lack of water service in the Municipality of Morovis shocks the conscience and constitutes a deprivation of the constitutionally protected interest of all

residential, commercial and governmental subscribers of PRASA who reside and/or do business in Morovis, including all Plaintiffs. "[U]nder Puerto Rico law a subscriber to public utility services has a protectable property interest in the continued receipt of services." Marrero García v. Irizarry, 829 F.Supp. 523 (D. P.R. 1993).

25.     The reasons or excuses provided by PRASA to justify the lack of water service in Morovis are many. These include, but are not limited to, events of heavy rainfalls, blocked water intakes, high turbidity of water, broken water lines, mechanical failures and power outages.  Every day there is an excuse.

26.     From 2017 to the present, personnel of the Municipality of Morovis, and Maldonado personally, have met in countless occasions with PRASA's officers, including co-Defendants Pagán and Rivera Ortiz, to discuss, and try to find a solution to the problem of lack of water service in the Municipality of Morovis. Although PRASA has made countless promises, including publicly, to the Municipality of Morovis and its residential and commercial subscribers, the continuous lack of water problem in the Municipality of Morovis continues up to this date.

27.     In countless occasions, since 2017 to the present, and in some months even on a daily basis, Maldonado has directly informed Pagán of the wards of the Municipality of Morovis that have no water service, hoping that direct communication with PRASA's Executive Director would at least improve the situation, but unfortunately these efforts have had not results, and the lack of water problem continues.

28.     Plaintiffs are tired of PRASA's excuses and need the problem of lack of water service to be solved immediately. Plaintiffs have a constitutional right to water service.

29    PRASA has sent water trucks to the Municipality of Morovis a few times when there is no water service. But most of the time PRASA does nothing to provide an alternative source of water for its subscribers of Morovis.

30.    PRASA has also deliberately failed to reasonably adjust the water service invoices of all Plaintiffs and of all its subscribers in the Municipality of Morovis, despite the fact that most of the time there is no water service. Thus, PRASA has unjustly enriched itself at the expense of its residential, governmental and commercial subscribers of the Municipality of Morovis.

31.    PRASA has a pattern, custom, policy or practice of leaving its subscribers of the Municipality of Morovis without water.  This is evidenced by the fact that most of the time there is no water service in the Municipality of Morovis.

32.    PRASA's failure to resolve the continuous problem of lack of water in the Municipality of Morovis "shocks the conscience" considering that (1) most of the time there is no water in the Municipality of Morovis, (2) water is an essential element of life, health, well-being, sanitation, etc., and (3) some members of Plaintiffs' class are people of old age, with diseases, and some have children.

33.    On August 10, 2017, Plaintiffs and hundreds of residents of the Municipality of Morovis protested in front of PRASA's central offices in San Juan due to the continuous lack of water service in the Municipality of Morovis.

34.    On April 18, 2018, due to PRASA's in action, the Municipality of Morovis executed an agreement with the U.S. Army Corps of Engineers, through which said organism agreed to plan the necessary actions to improve the performance and capacity of PRASA's raw water collection facilities located in Morovis.

35.     On December 20, 2019, the U.S. Army Corps issued its final report of the alternatives analyses and recommendations to reduce accumulation of sediment at the RWSIF and, thus, improve the water supply to the Municipality of Morovis. Said report was submitted to PRASA by both the U.S. Army Corps and the Municipality of Morovis, but consistent with PRASA's deliberate indifference to Plaintiffs constitutional rights, it took no action.

36.     From mid-2019 to the present, Maldonado and the Municipality of Morovis have received various confidences or tip-offs to the effects that PRASA's management in Morovis has instructed its employees to close, and/or were themselves closing, the water passage keys which supply water to the Municipality of Morovis, and/or turning off on purpose the pumps and he power generators at the RWSIF and/or the MSWTP, all this, with the intention of affecting Maldonado's image as Mayor of the Municipality of Morovis.

37.     On July 16, 2019, Maldonado sent letters to (1) former Executive President of PRASA, Elí Díaz Atienza, (2) former President of PRASA's Government Board, Héctor Del Río Jiménez, (3) former Puerto Rico Secretary of Justice, Wanda Vázquez Garced, and (4) former Puerto Rico Inspector General, Ivelisse Torres Rivera, respectively, requesting investigations about these confidences and/or tip-offs. As usual, nothing happened.

38.     Although, undoubtedly, there are serious problems with the water service infrastructure in the Municipality of Morovis, sometimes the lack of water problem can be solved by simply turning on the pumps and/or the power generators located at the RWSIF or at the MSWTP. There is, however, a deliberate indifference and an intentional negligence on the part of PRASA to do its job and/or fix the problem in the Municipality of Morovis.

39.     In October 2021, the Municipality of Morovis hired expert Tony La Luz ("Mr. La Luz") to help the Municipality figure out what was really happening with the lack of water service.

8

Mr. La Luz is a former PRASA employee who worked more than 20 years as Supervisor of the area of Vega Baja, Morovis and Ciales.

40.     On February 5, 2022, as is typical in the Municipality of Morovis, there was no water service in most of the Municipality. Therefore, Maldonado asked Mr. La Luz to visit the MSWTP to find out the reason why there was no water service. There was a PRASA employee at the MSWTP when Mr. La Luz arrived, and he told Mr. La Luz that the MSWTP was out of service since 5:00 a.m. because there was no electricity and the power generator at the RWSIF was not working. Therefore, the water could not be pumped from the RWSIF to the MSWPT and, consequently, there was no water for the people. La Luz, hence, went to the RWSIF to verify what was the problem with the power generator. Of course, Mr. La Luz cannot touch anything at, and has no access on its own to, PRASA's facilities.

41.     At 3:20 p.m., a PRASA employee arrived at the RWSIF and said he was going to fix the power generator. In less than five (5) minutes the power generator was running properly. The PRASA employee simply turned on the power generator. It then became clear that the power generator was working properly and that it only needed to be turned on. Mr. La Luz asked the PRASA employee "what happened here?", but the PRASA employee remained silent. Curiously, even after the power generator was turned on, the RWSIF's pumps did not turn on. This was odd because the same were supposed to turn on automatically once the power returned. Mr. La Luz then asked the PRASA employee to turn the pumps on. The PRASA employee, however, refused to do so, and said that a supervisor had to be called, and then said supervisor would send another PRASA employee to turn on the pumps.  Mr. La Luz then called the supervisor who, in turn, said that he would call another PRASA employee to go to turn on the pumps. When the PRASA

employee finally arrived at the RWSIF, the employee told Mr. La Luz that the pumps had been turned off, and the employee simply proceeded to turn them on.

42.     Mr. La Luz and the PRASA employee then agreed to visit the Morovis' intermediate tank and, inexplicably, the pumps there were also turned off. The PRASA employee told Mr. La Luz that these pumps were supposed to be turned on, as they automatically start, and he went and simply turned them on. Incredibly, someone had turned off the pumps.

43.     The next day, Mr. La Luz met with Maldonado and explained to her what had happened the day before. Maldonado immediately called Rivera Ortiz and informed him about what had occurred. Rivera Ortiz said that he could not believe the information he was hearing from Maldonado and Mr. La Luz, but the PRASA supervisor that Rivera Ortiz had next to him verbally confirmed to Rivera Ortiz the information that Maldonado and Mr. La Luz were giving him. Maldonado, therefore, asked Rivera Ortiz to please check the surveillance cameras that are installed at the MSWTP and the RWSIF, respectively, to verify who had turned off the power generator and/or the pumps, and to inform her accordingly, so that action could be taken against this or these persons. To this date, however, Rivera Ortiz has not answered Maldonado whether the surveillance cameras were able to record anyone turning off the pumps at the MSWTP or the RWSIF, respectively.

44.     Rivera Ortiz, as PRASA's Regional Executive Director, has not adequately trained and/or supervised PRASA's employees assigned to the Morovis area. This is evidenced by the fact that most of the time there is no water service in the Municipality of Morovis.

45.     The years long problem of lack of water in Morovis demonstrates PRASA's deliberate and/or reckless indifference, and intentional negligence, towards said problem and to

the terrible consequences and damages that Plaintiffs have suffered as a result of PRASA's inaction.

46.     PRASA has a 200,000 gallon tank in the ward of Barahona in the Municipality of Morovis, but, for reasons unknown to Plaintiffs, said tank is closed and not being used. When Mr. La Luz asked Rivera Ortiz why said tank was not being used, Rivera Ortiz admitted that he did not even know about the existence of said tank.

47.     To solve the problem of lack of water service in the Municipality of Morovis, Maldonado has suggested multiple times to co-Defendant Pagán to connect the water system of the Municipality of Morovis to PRASA's Superaqueduct, which is a 72" diameter pipeline with a production of approximately 100 million gallons per day. Connecting the water system of Morovis to PRASA's superaqueduct would solve the problem of lack of water service in the Municipality of Morovis. However, co-Defendant Pagán's response to said suggestion has always been that, prior to considering it, all other alternatives to try to fix the water problem in Morovis have to be exhausted. Evidently, PRASA is not in a hurry to fix the problem of lack of water service in Morovis. This deliberately indifferent behavior "shocks the conscience".

48.     The continuous lack of water service in the Municipality of Morovis, since at least 2017, has caused damages to Plaintiffs and potential class members in excess of $55 billion dollars. This amount is estimated at a rate of one thousand dollars ($1,000.00) per day without water, per Plaintiff or class member.[1]

## PLAINTIFFS CHALLENGE THE CONSTITUTIONALITY OF SECTION 4(C) OF PRASA'S ENABLING ACT

---

[1] There are 28,000 potential class members (the Municipality of Morovis has a population of approximately 28,000 residents). From January 1, 2017, to the present, 1,978 days have elapsed. $1,000 x 1,978 = $1,978,000.00 per Plaintiff. And there are approximately 28,000 potential class members.

49.     PRASA's Enabling Law, Law No. 40 of May 1, 1945 ("Law 40-1945), provides, in pertinent part, that PRASA "shall have and may exercise all rights and powers necessary or convenient to carry out  [its] purposes, including, but without limitation to, the following:

> . . .
> (c) To sue and be sued in its corporate name, **except that it may not be sued for damages arising from the real or alleged impurity, irregularity, or insufficiency of the water supplied by it** and except that judicial sale of properties of the Authority shall not be permitted.

Laws of P.R. Ann., Tit. 22, Sec. 144(c).

50.     Plaintiffs challenge the validity of the above-mentioned section of Law 40-1945, for it violates Plaintiff's due process and equal protection rights under the 14th Amendment of the United States Constitution.

## CLASS ACTION ALLEGATIONS

51.     Plaintiffs bring this suit as a class action under Federal Rules of Civil Procedure 23(b) and (c), on behalf of themselves and other similarly situated residential and commercial subscribers of PRASA who reside or do business in the Municipality of Morovis.

52.     All members of the class were (and are still being) injured because of Defendants' deliberate indifference and/or intentional negligence in providing adequate water service to PRASA subscribers in the Municipality of Morovis.

53.     The members of the class are so numerous that joinder of all class members is impracticable. So far, at least 1,582 residential subscribers of PRASA in the Municipality of Morovis have signed to join this class action, and there are approximately 28,000 potential class members.

54.     As it follows from the foregoing allegations, common issues of law and fact who apply to all members of the class predominate over any individual issues.

55.     The violations alleged by Plaintiffs are typical of those suffered by the class, as all members of the class are either residential or commercial subscribers of PRASA, have been continuously deprived of the water service and will benefit from the remedies sought in this action.

56.     Also, PRASA has refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

57.     Plaintiffs have no conflict of interest with any class member and are committed to the vigorous prosecution of all claims on behalf of the class and will fairly and adequately protect the interests of the class.

58.     The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

59.     This class action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all Class members is impracticable. The damages suffered by members of the Class, although substantial, are small in relation to the extraordinary expense and burden of individual litigation; therefore, it is highly impractical for such Class members to seek individual redress for damages.

60.     This class is appropriate for certification under Rule 23(b)(1), (2) and (3).

## FIRST CAUSE OF ACTION
## Temporary Restraining Order, Preliminary Injunction and Permanent Injunction
### (Fed.R.Civ.P. 65)

61.     Plaintiffs re-allege all previous paragraphs as if fully alleged herein.

62.     The specific facts alleged in this Verified Complaint show that Plaintiffs have suffered, are suffering, and will continue to suffer an immediate and irreparable injury, losses and

damages for every time (either weeks, various days, a full day or part of a day) that they do not have water service. PRASA's management, including co-Defendants Pagan and Rivera Ortiz, have had knowledge, for years, of the situation alleged herein by Plaintiffs, but the problem continues as of this date.

63.     Accordingly, Plaintiffs request the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to issue an temporary restraining order, a preliminary injunction and a permanent injunction against Defendants, (1) ordering Defendants to continuously provide adequate water service to PRASA's subscribers in the Municipality of Morovis, (2) enjoining Defendants from shutting down the water service in the Municipality of Morovis, (3) ordering Defendants to take affirmative and immediate steps to fix the water service problem in the Municipality of Morovis, including of connecting the Municipality of Morovis' water system to PRASA's superaqueduct, and (4) imposing monetary sanctions on Defendants, including co-Defendant Insurance Company ABC, for each day (or part of the day) that PRASA fails to provide water to its subscribers in the Municipality of Morovis, at a rate of $1,000 per day, per Plaintiff and/or class member.

### SECOND CAUSE OF ACTION
### Declaratory Judgment
### (Fed.R.Civ. P. 57 and 28 U.S.C. §§2001-2002)

64.     Plaintiffs re-allege all previous paragraphs as if fully alleged herein.

65.     The *Declaratory Judgment Act* authorizes federal courts to declare the rights of interested parties in a case of actual controversy. See Almonte v. Administracion de Correccion, 15 F. Supp. 2d 180, 181 (D.P.R. 1998); 28 U.S.C. § 2201 ("In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether

or not further relief is or could be sought."). An actual controversy is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Almonte, (quoting Diagnostic Unit Inmate Council v. Films Inc., 88 F.3d 651, 653 (8th Cir. 1996)).

66.     In determining whether to grant declaratory relief, a court should consider whether a declaratory judgment would "clarify the legal questions at issue and expedite resolution of the controversy." Metro. Property & Liability Ins. Co. v. Kirkwood, 729 F.2d 61, 62 (1st Cir. 1984)). "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id. (citations omitted). "The remedy of a declaratory judgment 'is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued.'" Norton Lilly Int'l, Inc. v. Puerto Rico Ports Auth., Civ. No. 18-1012, 2018 WL 5099758, at *3 (D.P.R. Oct. 17, 2018) (quoting Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2751 (4th ed. 2018)).

67.     Plaintiffs request the Court to declare that they, as PRASA subscribers, have a constitutionally protected right to continued and adequate water service, pursuant to the 14th Amendment of the Constitution of the United States.

68.     Plaintiffs also ask the Court to declare that the part of Section 4(c) of Law 40-1945 that states that PRASA "may not be sued for damages arising from the real or alleged impurity, irregularity, or insufficiency of the water supplied by it" is unconstitutional for it violates

Plaintiffs' due process and equal protection rights under the 14th Amendment of the United States Constitution.

### THIRD CAUSE OF ACTION – 42 U.S.C. §1983

**Violation of Substantive Due Process and Damages for the Unconstitutional Deprivation of Property (i.e., Continuous Lack of Water Service) in Violation of the Fourteenth Amendment of the U.S Constitution**

69.     Plaintiffs re-allege all previous paragraphs as if fully alleged herein.

70.     Under 42 U.S.C. § 1983, a plaintiff may bring suit "against '[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ....'". The purpose of § 1983 is to deter state actors from depriving individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Section 1983 does not itself create or establish a federally protected right; instead, it provides a cause of action to enforce federal rights created elsewhere, such as a federal constitutional right. Albright v. Oliver, 510 U.S. 266, 271 (1994). The U.S. Supreme Court has identified two elements of a § 1983 claim: "a plaintiff [(1)] must allege the violation of a right secured by the Constitution and laws of the United States, and [(2)] must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

71.     In this case, the deprivation of Plaintiff's constitutionally protected rights has been committed by Defendants "under color of state law". Defendants, through their acts and omissions, have violated Plaintiffs' rights under the 14th Amendment of the Constitution of the United States as Plaintiffs have suffered (and continue to suffer) a deprivation of their constitutionally protected right to adequate water service as a subscriber of PRASA. Defendants' conduct have caused economic damages to the Municipality of Morovis in excess of one million dollars

($1,000,000.00), as previously alleged, and to the individual plaintiffs at a rate of $1,000.00 per day without water service. "Although utility service may be restored ultimately, the cessation of essential services for any appreciable time works a uniquely final deprivation." <u>Memphis Light, Gas and Water Division v. Craft</u>, 436 U.S. 1, 20 (1978).

72.     Plaintiffs request that the Court orders Defendants to compensate Plaintiffs for their damages at a rate of one thousand dollars ($1,000.00) per day without water, per Plaintiff and/or class member.

## VI.  Relief

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, respectfully request:

A.     That an order be issued by the Court certifying this suit as a class action pursuant to Federal Rule of Civil Procedure 23;

B.     That a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction be issued by the Court against Defendants:

> (1)     ordering Defendants to continuously provide adequate water service to PRASA's subscribers in the Municipality of Morovis,
>
> (2)     enjoining Defendants from shutting down the water service in the Municipality of Morovis in the future,
>
> (3)     ordering Defendants to take affirmative and immediate steps to identify and fix the water service problem in the Municipality of Morovis, including connecting the Municipality of Morovis' water system to PRASA's superaqueduct, and
>
> (4)     imposing monetary sanctions on Defendants, including co-Defendant Insurance Company ABC jointly and severally, for each

day (or part of the day) that PRASA fails to provide water to its subscribers in the Municipality of Morovis, at a rate of $1,000 per day, per Plaintiff and/or class member.

C.    That Judgment be issued

    (1)    declaring that Defendants' failure to provide water service to Plaintiffs' and the class members violate their substantive due process and equal protection rights established in the Fourteenth Amendment of the United States Constitution, and that all Plaintiffs and class members are constitutionally entitled to continuous water service.

    (2)    Declaring that the part of Section 4(c) of Law 40-1945 that states that PRASA "may not be sued for damages arising from the real or alleged impurity, irregularity, or insufficiency of the water supplied by it" is unconstitutional for it violates Plaintiffs' due process and equal protection rights under the 14th Amendment of the United States Constitution.

    (3)    Awarding Plaintiffs and class members compensation for the damages and losses suffered as a result of the lack of water service, including compensation for mental anguish and emotional distress, at a rate of $1,000 per day without water, per Plaintiff and/or class member.

    (4)    awarding punitive damages to Plaintiffs and Members of the Class.

(5)     awarding Plaintiff's and the class attorney's reasonable fees, costs, and expenses incurred in prosecuting this action.

(6)     granting Plaintiffs and the class members other relief as this Honorable Court deems appropriate and proper.

A jury trial is requested.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on June 2, 2022.

**s/ Carmen Maldonado González**
Carmen Maldonado González
*Pro Se in her Personal Capacity*
Urb. Valle Barahona
47 Pomarrosa St.
Morovis, P.R. 00687
Tel. (939) 301-3442

**s/ Andrés C. Gorbea Del Valle**
Andrés C. Gorbea Del Valle
*Plaintiffs' Counsel*
USDC-PR Bar No. 226313
PO Box 195191, San Juan, PR 00919
(787) 217-2234
andres_gorbea@yahoo.com

**s/ Héctor Figueroa Vincenty**
Héctor Figueroa Vincenty
*Plaintiffs' Counsel*
USDC-PR Bar No. 120006
310 San Francisco St., 3rd Floor
San Juan, P.R. 00901
hector@elbufetedelpueblo.com

**STATEMENT UNDER PENALTY OF PERJURY UNDER 28 U.S.C. Sec. 1746**

I, Carmen Maldonado González, of legal age, Mayor of the Municipality of Morovis, Puerto Rico, and plaintiff in this case, hereby declare under penalty of perjury that the facts set forth in the foregoing verified complaint are true and accurate to the best of my knowledge.

In San Juan, Puerto Rico today June 2, 2022.


s/Carmen Maldonado González
Carmen Maldonado González
Mayor of the Municipality of Morovis