**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| CARMEN MALDONADO-GONZÁLEZ, et al.,<br><br>*Plaintiffs,*<br><br>v.<br><br>PUERTO RICO AQUEDUCTS AND SEWER AUTHORITY, et al.,<br><br>*Defendants.* | CIVIL NO. 22-1250 (MDM) |

**MOTION TO DISMISS
AMENDED VERIFIED COMPLAINT**

**TO THE HONORABLE COURT:**

    **COMES NOW**, Doriel Pagán-Crespo ("Pagán-Crespo"), in her personal capacity, without waiving any right or defense arising from Title III of the *Puerto Rico Oversight, Management and Economic Stability Act* ("PROMESA"), 48 U.S.C. §§2101 *et seq.*, and the Commonwealth's Petition under said Title or under this case, represented by the undersigned counsel, and very respectfully **STATES** and **PRAYS** as follows:

**I.    INTRODUCTION**

    This is a Fourteenth Amendment civil rights violation suit under 42 U.S.C.A. § 1983 ("Section 1983") in which Plaintiffs seek injunctive and declaratory relief, and damages, for the alleged pattern of unconstitutional deprivation of water service in the Municipality of Morovis (Docket No. 23 at p. 2). Plaintiffs are Carmen Maldonado González ("Maldonado"), in her personal capacity as residential subscriber of Puerto Rico

1

Aqueducts and Sewer Authority ("PRASA") and in her official capacity as Mayor of the Municipality of Morovis; the Municipality of Morovis, a governmental subscriber of PRASA; and six residential subscribers of PRASA.[1] They are suing PRASA and Doriel Pagán-Crespo, PRASA's former Executive Director ("Pagán-Crespo"), in her personal capacity.

In a nutshell, Plaintiffs allege that codefendant PRASA is the sole provider of water services in Puerto Rico, and that codefendant Pagán-Crespo was "PRASA's Executive Director and, as such, is responsible of ensuring that all PRASA's subscribers receive an adequate water service in exchange of the monthly water fee collected by PRASA" (Docket 23, ¶¶ 5 & 6). Pagán-Crespo is "also directly responsible of overseeing and supervising all PRASA's districts or areas in Puerto Rico, including the Morovis area." (Id., ¶6). Plaintiffs allege that for many years the Municipality of Morovis and its residents have suffered continuous problems of lack of water service, a situation which has received widespread press attention (Id., ¶¶ 16-18). The water supply problem worsened after Plaintiff Maldonado took office as Mayor in January 2017 (Id., ¶¶ 20 & 21). To attempt to address the complaints of its residents, the Municipality spent more than one million dollars ($1,000,000) on water and distribution, as well as on experts to study the situation and advise about possible solutions (Id., ¶¶ 22 & 23). Even though promises have been made, Defendants have failed to solve the problem, offering instead unacceptable excuses (Id., ¶¶ 25 & 26).

---

[1] The six residential subscribers are: (1) Genoveva López, (2) Justiniano Calderón, (3) Sherley Soto, (4) Aurea Castellano, (5) Sonia Otero, and (6) Miguel A. Sepúlveda, who reside in the wards of Unibón, Torrecillas, Barahona, Morovis Sur, Río Grande, and Franquez, respectively, of the Municipality of Morovis, on their behalf and on behalf of other similarly situated residential and commercial subscribers of PRASA who reside or do business in Morovis. (Docket No. 23 at pp. 2-3, ¶ 3).

As grounds for their claims under the Fourteenth Amendment, Plaintiffs alleged that the problem of water service "shocks the conscience and constitutes a deprivation of the constitutionally protected interest of all residential, commercial and governmental subscribers of PRASA who reside and/or do business in Morovis." (Id., 24). They also alleged that under the laws of Puerto Rico a subscriber of public utility services has "a protectable interest in the continued receipt of services" and that "[p]laintiffs have a constitutional right to water service" (Id., ¶¶24 & 28). PRASA has a policy and practice of not providing water service to Morovis and fails to adjust its invoices to account for such lack of service (Id., ¶¶ 30 & 31). PRASA has also taken no action on a report by the U.S. Army Corps of Engineers with recommendations on how to address the problem, which further demonstrates PRASA's "deliberate indifference and an intentional negligence" (Id. ¶¶35 & 38). This lack of adequate service has caused damages to Plaintiffs and potential class members, which they currently estimate at $55,000,000,000 (Id., ¶48). They also seek declaratory and injunctive relief, punitive damages, costs and attorney's fees. (Id., ¶¶60-65).

## II.     PROCEDURAL BACKGROUND

On August 24, 2022, Codefendant Pagán-Crespo moved to dismiss Plaintiffs' Amended Complaint (Docket No. 31), on the grounds that Plaintiffs had not sufficiently pleaded a valid constitutional violation under the Due Process Clause of the Fourteenth Amendment because a sufficient water supply is not a constitutionally protected right (Id., p. 9). Pagán-Crespo also argued that she was entitled to qualified immunity because the regularity or sufficiency of water service by PRASA was not a clearly established right at the time of the events referred to in the complaint (Id., p. 14). PRASA also moved for

3

dismissal on that date arguing that Plaintiffs had failed to allege facts to give rise to a plausible claim for violation of due process rights (Docket No. 30). Plaintiffs opposed Pagan-Crespo's motion, as well as PRASA's (Docket Nos. 36 & 41).

On March 22, 2023, the Court ordered the dismissal of all claims with prejudice (Docket No. 67). The Court concluded that Plaintiffs' substantive due process claims failed to plausibly state a cause of action for which relief can be granted (Id. p. 8). After describing and analyzing the requisites for this cause of action, the Court concluded that Plaintiffs' pleadings described a picture of incompetence and lack of urgency to fix the municipality's water service issues, but the specific actions and omissions therein described did not rise to a conscience-shocking level as required by the First Circuit in its precedents on the subject (Id., p. 11 & 13). On these grounds the Court dismissed Plaintiffs' Section 1983 claims against Defendants (Id., p. 22), declining to address PRASA's arguments for immunity under its enabling act and under the Puerto Rico Oversight Management and Economic Stability Act (PROMESA), and Pagán-Crespo's qualified immunity argument (Id. p. 8).

The Court of Appeals for the First Circuit vacated the District Court's ruling and remanded the case for further proceedings. See *Maldonado-González v. Puerto Rico Aqueduct & Sewer Authority,* 158 F.4th 27 (1st Cir., 2025). The Court of Appeals concluded that Plaintiffs had plausibly alleged in their complaint that Defendants knew of the water crisis and yet failed to act, and that they knew of the substantial risks of harm from a lengthy lack of water service, disregarding those risks (Id., pp. 36-37). Considering such knowledge, Defendants' failure to act over several years "is enough to support a claim of conduct that is 'so egregious [ ] [and] outrageous [ ] that it may fairly be said to

shock the contemporary conscience' " (Id., p. 37). The Court of Appeals also held that "[t]o the extent the district court concluded that the alleged conduct was negligent and thus 'categorically insufficient to shock the conscience', it failed to draw all reasonable inferences in the plaintiffs' favor" (Id.). Finally, in vacating the lower court's ruling dismissing Plaintiffs' substantive due process claims, the Court of Appeals specifically stated that "we do not reach issues unaddressed by the district court…[t]hus, we leave the second inquiry required to evaluate the plaintiffs' substantive due process claim— whether the plaintiffs were deprived of a protected property interest—to be decided by the district court in the first instance, with the benefit of focused argumentation on this potentially dispositive issue" (Id., p. 40).

As to Pagán-Crespo's qualified immunity argument for dismissal, the Court of Appeals decided to "decline to resolve Pagán's qualified immunity claim in the first instance and remand to the district court to evaluate her arguments" (Id., p. 41).

Once remanded, on February 4, 2026, this Court held a Status and Scheduling Conference, in which the parties agreed that "a renewed briefing schedule was appropriate to readdress the unresolved dispositive issues" (Docket No. 84, p. 1).

Pursuant to the briefing schedule agreed to and approved by the Court, Defendant Doriel Pagán-Crespo hereby moves again for dismissal of all claims against her, on the grounds that A) Plaintiffs failed to properly plead a proprietary interest under the laws of Puerto Rico to state a claim for relief under the substantive due process component of the Fourteenth Amendment; and B) she is entitled to qualified immunity on all claims

against her. On these grounds, all claims against Pagán-Crespo should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

### III.     MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court can dismiss a complaint that fails to state a claim upon which relief can be granted. *Ocasio-Hernández v. Fortuño Burset*, 640 F.3d 1, 11-12 (1st Cir. 2011). When considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint. *Litton Indus., Inc. v. Colón*, 587 F.2d 70, 74 (1st Cir. 1978). The Court's inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim...." Id. *See also Robledo v. Furiel Auto Corp.*, 2015 WL 1099608, at *1 (D.P.R. Mar. 11, 2015). The Court accepts all well pleaded-factual allegations as true and indulges all reasonable inferences in Plaintiffs' favor. *Nisselson v. Lernout*, 469 F.3d 143, 150 (1st Cir. 2006). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). To survive dismissal, Plaintiff's "well-pleaded facts must possess enough heft to show that they are entitled to relief." *Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir. 2008).

When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Technology*, 950 F2d 13, 22 (1st Cir. 1991). Plaintiffs are responsible for putting their best foot forward to present a legal theory that will support their claim. Id. at 23. Courts are not required to accept as

---

[2] Pagán-Crespo's arguments in this filing for dismissal on qualified immunity and lack of proprietary interest grounds substantially mirror the arguments raised in the August 24, 2022 Motion to Dismiss (Docket No. 31), which were not addressed then and were subject of remand by the Court of Appeals.

true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); See also *García v. Character Technologies, Inc.,* 785 F.Supp. 3d. 1157, 1170 (M.D. Fla., 2025).

### IV. LEGAL ANALYSIS AND DISCUSSION

#### a. Civil Rights Action under 42 U.S.C. § 1983

Section 1983 allows individuals to sue certain persons for depriving them of **federally assured rights** under color of state law. 42 U.S.C.A. § 1983. *Fincher v. Town of Brookline*, 26 F.4th 479 (1st Cir. 2022). It authorizes a "suit in equity, or other proper proceeding for redress" against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). Section 1983 does not create any independent substantive rights; it is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors. *See Baker v. McCollan,* 443 U.S. 137, 145, n.3 (1979) ("Section 1983 . . . is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred . . ."); *Albright v. Oliver*, 210 U.S. 266 (1994); *Lockhart-Bembery v. Sauro*, 498 F.3d 69, 74 (1st Cir. 2007). Section 1983 merely provides a mechanism to remedy for deprivations of rights that are federally enshrined elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985).

To establish liability pursuant to Section 1983, a plaintiff must first establish that "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). However, "it is not enough for an individual

7

merely to purport to exercise official power in order to trigger § 1983 liability, but rather the individual must actually be engaged in the abuse of official power granted by the government." *Blasko v. Doerpholz*, 2016 WL 11189804, at *13 (D. Mass. Aug. 22, 2016)(citing *Parilla-Burgos v. Hernández-Rivera*, 108 F.3d 445, 449 (1st Cir. 1997)). Secondly, a plaintiff must allege facts sufficient to conclude that the alleged conduct worked a denial of rights secured by the Constitution or laws of the United States. *Cepero-Rivera v. Fagundo*, 414 F.3d 124 (1st Cir. 2005). A Section 1983 violation occurs when an official acting under color of state law acts to deprive an individual of a federally protected right. *Maymí v. Puerto Rico Ports Authority*, 515 F.3d 20, 25 (1st Cir. 2008). Moreover, the plaintiff must show "that the [defendant's] conduct was the cause in fact of the alleged deprivation." *Gagliardi v. Sullivan,* 513 F.3d 301, 306 (1st Cir. 2008) (quoting *Rodríguez-Cirilo v. García,* 115 F.3d 50, 52 (1st Cir.1997)).

A plaintiff is required to allege personal action or inaction by each defendant within the scope of their responsibility that would make each of them personally answerable in damages pursuant to Section 1983. *Pinto v. Nettleship*, 737 F.2d 130, 133 (1st Cir. 1984). He must show that the defendants were involved in the alleged deprivation of his rights, that is, who did what to whom. To impose liability upon a defendant, it is necessary that "the conduct complained of must have been *causally connected* to the deprivation." *Charron v. Cty. of York*, 2020 WL 1868767, at *28 (D. Me. Apr. 14, 2020) (quoting *Gutierrez-Rodríguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989)).

"It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions." *Braga v. Hodgson*, 605 F.3d 58, 61 (1st Cir. 2010) (quoting *Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir. 1999)). "Absent

vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "In a civil rights action, as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why -- although why, when why means the actor's state of mind, can be averred generally." *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004).

> **b. Plaintiffs have not met the required elements for a Section 1983 claim and have not sufficiently pled a valid constitutional violation under the Due Process Clause of the Fourteenth Amendment**

Plaintiffs allege that "Defendants, through their acts and omissions, have violated Plaintiffs' rights under the 14th Amendment of the Constitution of the United States as Plaintiffs have suffered (and continue to suffer) a deprivation of their constitutionally protected right to adequate water service as a subscriber of PRASA." (Docket No. 23 at p. 16, ¶ 68). Plaintiffs allege that such actions and omissions violate their rights under the substantive component of the due process clause of the Fourteenth Amendment (Id.).

The Due Process Clause of the Fourteenth Amendment, which prohibits a state from depriving any person of "life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1, has both a substantive and a procedural component. *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). The right to substantive due process is narrow. *See Ramos-Piñero v. Puerto Rico*, 453 F.3d 48, 52 (1st Cir. 2006). "The substantive component of due process protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Souza v. Pina*, 53 F.3d 423, 425-26 (1st Cir. 1995) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Generally, courts are "reluctant to expand the concept of substantive due process

9

because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992).

To set forth a viable substantive due process claim, a plaintiff must allege and eventually establish that he suffered a deprivation of an established life, liberty or property interest and that such deprivation occurred through governmental action that shocks the conscience. *Lambert v. Fiorentini*, 949 F.3d 22, 27 (1st Cir. 2020). Specifically, bodily integrity and autonomy claims are based on the common law "right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891); *see also Ingraham v. Wright*, 430 U.S. 651, 673 (1977) ("Among the historic liberties so protected [by the Due Process Clause] was a right to be free from and to obtain judicial relief [...] for unjustified intrusions on personal security."). Indeed, "[n]o right is held more sacred." *Union Pac. Ry. Co.*, 141 U.S. at 251. In that sense, the First Circuit has held that a plaintiff must bring a substantive due process claim by demonstrating a deprivation of a "fundamental" interest protected by the Fourteenth Amendment. *See Sever v. City of Salem, Mass.*, 2020 WL 948413, at *1 (1st Cir. 2020).

Although substantive property interests are created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the due process clause of the Fourteenth Amendment. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978) ("*Memphis Light*").

Plaintiffs' pleadings fail to meet this property interest requirement for their cause of action, and such failure should lead the Court to dismiss their Amended Complaint. In support of the alleged existence of such interest Plaintiffs cited *Memphis Light, Gas and Water Division v. Craft,* 436 U.S. 1 (1978). This precedent is clearly distinguishable from the facts of this case and does not support their argument for the existence of such interest.

In *Memphis Light*, supra, the Supreme Court of the United States concluded that due process requires at a minimum an opportunity for presenting to personnel empowered to rectify error, a customer's complaint that he is being overcharged or charged for services not rendered, and such procedure was not made available to the respondents in the case. *Memphis Light*, 436 U.S. 1, 2. It did not hold that a subscriber to public utility services has a property interest that protects them from the **irregularity or insufficiency of the water supplied**.

In our district, in *Marrero García v. Irizarry*, 829 F. Supp. 523 (D.P.R. 1993), *aff'd*, 33 F.3d 117 (1st Cir. 1994) residents of a condominium complex brought an action under Section 1983 alleging a due process violation in connection with public utility's discontinuance of water service. This Court held that "under Puerto Rico law a subscriber to public utility services has a protectable property interest in the continued receipt of services" *Marrero García*, 829 F.Supp. at 528, but the plaintiffs, who had not entered into contract with utility for purchase of water services, had no constitutionally protected interest in continued receipt of such services. *Marrero García* was a case about the protectable property interest that a subscriber to the public utility of water has in the service not been suspended for nonpayment without notice and the opportunity to be

heard under the Act to Establish Minimum Procedural Requirements for the Suspension of Essential Public Services, P.R. Laws Ann. tit. 27, § 262. [3] *Marrero García*, 829 F.Supp. at 528. This precedent is easily distinguishable from the allegations in this case. The issue in *Marrero García* is not one of "lack of water service" (Docket No. 23 at p. 4, ¶ 16), which is the main issue alleged by Plaintiffs. In *Marrero García* the Court clarified that "[t]he only issue" before the USDCPR was "whether the plaintiffs suffered a deprivation of their procedural due process rights resulting from PRASA's 10–day suspension of water service to the Condominium." *Marrero García*, 829 F. Supp. at 527. In *Marrero García* the plaintiffs did not have accounts with PRASA. Here, however, Plaintiffs claim that they all "have valid registered accounts with PRASA and paid the corresponding bonds for the water service subscription, as well as PRASA's monthly water service invoices." (Docket No. 23 at p. 4, ¶ 14).

In addition, it should be noted that PRASA's enabling law, Law No. 40 of May 1, 1945 ("Law 40-1945") provides that PRASA may not be sued for damages arising from the real or alleged impurity, irregularity, or insufficiency of the water supplied by it. P.R. Laws Ann. tit. 22, § 144 (c).

In summary, Plaintiffs' conclusory allegations as to the existence of a proprietary interest under the laws of Puerto Rico of regular water service without interruptions are insufficient to properly state a claim under the substantive component of the due process clause of the Fourteenth Amendment, because under the laws of Puerto Rico no such

---

[3] The purpose of the act "is to guarantee to the subscribers or consumers an adequate opportunity to question the accuracy and source of the charges invoiced, and an adequate notice of the decision to discontinue services for nonpayment, as well as to guarantee an adequate disclosure of the complete procedure established." P.R. Laws Ann. tit. 27, § 262

12

proprietary interest exists. Their claims should therefore be dismissed for failing to state a claim for which relief may be granted by this Court.

### c. Pagán-Crespo is entitled to Qualified Immunity

"Qualified immunity is an affirmative defense against damages liability which may be raised by state officials sued in their personal capacity." *Mafuz Blanco v. Tirado Delgado*, 641 F. Supp. 1287, 1288 (D.P.R. 1986). The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986). "Long-standing principles of constitutional litigation entitle public officials to qualified immunity from personal liability arising out of actions taken in the exercise of discretionary functions." *Cruz v. Puerto Rico Plan. Bd.*, 2017 WL 3836050, at *12 (D.P.R. Aug. 31, 2017) (citing *Glik v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011)).

To determine whether a public official is entitled to qualified immunity from liability under Section 1983, courts engage in a two-step analysis, under which they first must determine whether plaintiff's version of the facts makes out a violation of a protected right,

and at the second step, whether the right at issue was clearly established at the time of defendant's alleged misconduct. *Alston v. Town of Brookline*, 997 F.3d 23, 50 (1st Cir. 2021). Importantly, "[c]ourts need not engage in the first inquiry and may choose, in their discretion, to go directly to the second." *Penate v. Hanchett*, 944 F.3d 358, 366 (1st Cir. 2019). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 7 (2021) (citing *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Although the Supreme Court's "case law does not require a case directly on point for a right to be clearly established, **existing precedent must have placed the statutory or constitutional question beyond debate**." *Id*. at 7-8, emphasis added.

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526, (1985) (emphasis deleted). Accordingly, the Supreme Court has repeatedly "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id*. (citing *Hunter v. Bryant,* 502 U.S. 224, 227 (1991).

In this case, Defendant Pagán-Crespo argued in the prior section of this filing that Plaintiffs' allegations fail to properly plead the violation of a federally protected right, because they fail to properly allege the existence of a property interest under the laws of Puerto Rico. They do not have a right to a sufficient and efficient water supply and if they have one, it was not so clearly established as to render inapplicable the shield of qualified immunity to Pagán-Crespo's claims. In addition, PRASA's enabling law, Law 40-1945, provides, in pertinent part, that PRASA may "sue and be sued in its corporate name,

except that it **may not be sued for damages arising from the real or alleged impurity, irregularity, or insufficiency of the water supplied by it** and except that judicial sale of properties of the Authority shall not be permitted." P.R. Laws Ann. tit. 22, § 144 (c). (Emphasis added). In her individual capacity, Pagán-Crespo was entitled under the statute to immunity from liability for irregular water service, which extended to the agency as well.

The Amended Complaint states that Pagán-Crespo was "directly responsible of overseeing and supervising all PRASA's districts or areas in Puerto Rico, including the Morovis area," that she "has direct and personal knowledge of the pattern of lack of water service in the Municipality of Morovis," and that "she has personally met in various occasions with Maldonado and other Plaintiffs to discuss this continuous problem." (Docket No. 23 at p. 3, ¶ 6).

In summary, regularity or sufficiency of water was not a right clearly established at the time of Pagán-Crespo's alleged misconduct. There is not one single allegation that can be attributed personally to her regarding the discontinuing of Plaintiffs' water service because they have not paid or because they do not have valid registered accounts with PRASA, as required by existing precedents. What was clearly established for Pagán-Crespo was Law 40-1945 clarifying that PRASA "may not be sued for damages arising from the real or alleged impurity, irregularity, or insufficiency of the water supplied by it." P.R. Laws Ann. tit. 22, § 144 (c).

### d. CONCLUSION

Plaintiffs have not properly alleged that the sufficiency of water supply is a constitutionally protected right but if it is, they have failed in demonstrating that Pagán-

Crespo's conduct was the cause in fact of the alleged deprivation of water. Thus, Plaintiffs have not met the required elements for a Section 1983 claim and do not sufficiently plead a valid constitutional violation under the Due Process Clause of the Fourteenth Amendment. In addition, Pagán-Crespo is entitled to qualified immunity because Plaintiffs have not established that sufficiency of water supply is a constitutionally protected right and have failed to establish that sufficiency of water was a right clearly established at the time of Pagán-Crespo's alleged misconduct.

**WHEREFORE**, based on the arguments set forth in the instant motion, it is respectfully requested that Plaintiffs' claims against Pagán-Crespo, in her personal capacity, be dismissed with prejudice.

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court, who will send notice of such filing to all parties formally registered in the CM/ECF System.

In San Juan, Puerto Rico, this 19th day of February 2026.

| | |
|---|---|
| **LOURDES L. GÓMEZ TORRES**<br>Attorney General<br><br>**TANIA L. FERNÁNDEZ-MEDERO**<br>Assistant Secretary for Civil Litigation<br><br>**JOSUÉ N. TORRES CRESPO**<br>Director of Legal Affairs<br>Federal Litigation and Bankruptcy Division | *s/ José R. Cintrón-Rodríguez*<br>JOSÉ R. CINTRÓN-RODRÍGUEZ<br>USDC No. 204905<br>Department of Justice of Puerto Rico<br>Federal Litigation & Bankruptcy Division<br>P.O. Box 9020192<br>San Juan, Puerto Rico 00902-0192<br>Email: jose.cintron@justicia.pr.gov<br>Phone: 787-721-2900 Ext. 1480,1421 |